IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICK JARAMILLO, STEVE DURAN,
RAILYARD BREWING COMPANY, LLC,
RINGSIDE ENTERTAINMENT, LLC,

    Plaintiffs,

v.                                                    Case No. 17-00673 JB/SCY

DAVID FREWING, U.S. BOWLING
CORPORATION, a Nevada corporation,
and CRAIG DILL, Chapter 11 Trustee.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendant Craig Dill's Amended Motion to Dismiss for Failure to State a Claim, Lack of Jurisdiction, and for Sanctions (Doc. 12) and Defendants David Frewing and U.S. Bowling Corporation's Amended Motion to Dismiss, or in the alternative, Stay the Proceedings (Doc. 14). This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) by United States District Judge James O. Browning on January 29, 2018. Doc. 18. Consistent with that Order of Reference, the Court enters these proposed findings and recommended disposition (PFRD) recommending that Defendants' Motions be GRANTED for the reasons explained below.

**I.    BACKGROUND**

Plaintiffs Rick Jaramillo and Steve Duran are equity partners in Railyard Company, LLC. On September 4, 2015, Railyard Company commenced Chapter 11 bankruptcy proceedings. *See In re Railyard Co., LLC,* Case No. 15-12386-t11, Doc. 1. On July 13, 2016, United States Bankruptcy Judge Robert Jacobvitz entered an order approving the appointment of Defendant Craig Dill as Chapter 11 Trustee of the bankruptcy estate over the objections of Plaintiffs Duran

and Jaramillo. Bank. Proc., Doc. 308. On August 18, 2018, Defendant Dill, in his capacity as Trustee, moved for an order approving the rejection of an executory contract between Railyard Company, LLC and Plaintiff Railyard Brewing Company. United States Bankruptcy Judge David T. Thuma granted the motion and approved rejection of the lease. Bank. Proc., Doc. 508. Judge Thuma further approved rejection of a pre-petition lease with Plaintiff Ringside Entertainment and terminated that lease as well. Bank. Proc., Doc. 420.

Both leases concerned a space at a two-story, multi-tenant building at the Railyard in Santa Fe, New Mexico. *See* Bank. Proc., Doc. 629. Plaintiff Ringside Entertainment's lease contemplated use of the space as a combination restaurant, bar, and eight-lane bowling center. *Id.* Pursuant to the plan, Plaintiff Ringside contracted with U.S. Bowling for the purchase of bowling lanes and related bowling equipment. *Id.* At some point, however, Ringside Entertainment abandoned this project. *Id.* On January 30, 2014, Plaintiff Railyard Brewing signed a lease for the space with the intention of operating the restaurant, bar, and bowling center. *Id.* After bankruptcy proceedings were commenced, Defendant Dill determined that a bowling center would not be feasible at that location and moved for an order approving the sale of the bowling equipment. Plaintiffs Duran and Jaramillo objected to the sale of the equipment and contended that the bowling equipment did not belong to the bankruptcy estate. *Id.* at 7. Plaintiffs Duran and Jaramillo further argued in the alternative that the sale should not be completed because the bankruptcy estate has claims against U.S. Bowling for negligent installation of the bowling equipment. *Id.* at 8. Judge Thuma rejected these arguments and approved sale of the bowling equipment on June 21, 2017. Bank. Proc., Doc. 629 at 11; Bank. Proc., Doc. 640. U.S. Bowling ultimately entered into an agreement to purchase back the bowling equipment. Bank Proc., Doc. 640.

On June 23, 2017, Plaintiffs filed the present lawsuit against Chapter 11 Trustee Craig Dill, U.S. Bowling, and David Frewing bringing claims for breach of contract, promissory estoppel, and negligent misrepresentation. Civ. No. 17-673, Doc. 1. Plaintiffs' claims are premised on the circumstances surrounding U.S. Bowling's installation of the bowling equipment and the eventual sale of the bowling equipment by Defendant Dill. While difficult to parse the exact facts being asserted in support of Plaintiffs' claims, Plaintiffs allege that they entered into an agreement for the installation of bowling equipment with U.S. Bowling. Doc. 1 at ¶ 12. Plaintiffs allege that in March 2013, Jaramillo signed a change order for the installation of sound attenuation equipment due to complaints from other tenants regarding noise emanating from the bowling equipment. Doc. 1 at ¶ 15. Plaintiffs allege that U.S. Bowling represented that installation of the sound attenuation equipment would satisfy the other tenants' concerns. Doc. 1 at ¶ 15. Plaintiffs allege, however, that they continued to receive complaints regarding noise. Doc. ¶ 16. Plaintiffs allege that they continued to exchange communications with U.S. Bowling regarding completion of the sound attenuation equipment as well as other bowling equipment. Doc. ¶ 17. Plaintiffs allege that the project was not completed because Defendant Dill subsequently moved in the bankruptcy proceedings to terminate the project. Doc. 1 at ¶ 21. Plaintiffs allege Defendant Dill subsequently entered into an agreement with U.S. Bowling for U.S. Bowling to purchase the bowling equipment at a significantly reduced price. Doc. 1 at ¶ 22. Plaintiffs further allege that U.S. Bowling did not have the appropriate contractor's licenses to undertake the work contrary to state law. Doc. 1 at ¶ 24. Plaintiffs allege that Defendant Dill is "aiding and abetting" U.S. Bowling's unlicensed contracting work and conspired with U.S. Bowling "in its unjust enrichment." Doc. 1 at ¶ 26.

This is not the first lawsuit Plaintiffs Steven Duran and Rick Jaramillo have pursued against Defendant Dill in his capacity as trustee of the bankruptcy estate. On August 15, 2016, Plaintiffs filed suit against Mr. Dill and attempted to nullify Judge Jacobvitz's order approving his appointment as trustee. *See Duran v. Dill*, Civ. No. 16-928. Chief Judge William P. Johnson ultimately dismissed the plaintiffs' Complaint on the bases that (1) Defendant Dill, in his capacity as trustee, was immune from suit; (2) the court lacked subject matter jurisdiction because the plaintiffs had not obtained permission to sue Defendant Dill, and (3) the plaintiffs insufficiently served him. *See id.* Doc. 6 at 5-7.

In the present case, Defendants filed their Amended Motions to Dismiss on November 1, 2017, and November 6, 2017, respectively. Defendants raise multiple reasons as to why Plaintiffs' Complaint should be dismissed. Both Defendants contend that (1) the Court does not have federal question or diversity jurisdiction; (2) Plaintiffs do not have standing to pursue claims set forth in the Complaint, which are exclusively bankruptcy estate property; (3) Plaintiffs have willfully violated the automatic stay in the bankruptcy proceeding; and (4) Plaintiffs have failed to comply with D.N.M.LR-Civ. 83.7 requiring corporations, partnerships, or business entities to be represented by attorneys authorized to practice law before this Court. Defendant Dill separately also moves for dismissal on the basis that he is entitled to quasi-judicial immunity in his capacity as trustee of the bankruptcy estate and that the Court lacks subject matter jurisdiction because Plaintiffs failed to obtain the permission of the Bankruptcy Court to sue him in that capacity. Defendant Frewing separately contends that Plaintiffs have failed to state a claim against him.

Plaintiffs did not respond to Defendants' Amended Motions to Dismiss. Although the Court's local rules provide that a party's failure to respond to a motion generally constitutes

consent to grant the motion, the Court "cannot…grant a motion to dismiss or a motion for summary judgment based solely on plaintiff's failure to respond and must consider the merits of the motion." *See Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003).  As explained below, because neither federal question nor diversity jurisdiction exists, I recommend concluding that the Court lacks subject matter jurisdiction and that Plaintiffs' Complaint should be dismissed.

## II. ANALYSIS

### A. Plaintiffs Duran and Jaramillo are Not Permitted to Represent Railyard Brewing Company, LLC and Ringside Entertainment, LLC *Pro Se*

As an initial matter, the Court notes that Plaintiffs Duran and Jaramillo are proceeding *pro se*.  There has been no entry of appearance on behalf of Railyard Brewing Company, LLC or Ringside Entertainment, LLC. The Supreme Court of the United States has directed lower courts to hold *pro se* litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The *pro se* litigant "nevertheless must follow the same rules of procedure that govern other litigants," *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992), and it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

Under this district's local rules, "a corporation, partnership or business entity other than a natural person must be represented by an attorney authorized to practice before this Court." D.N.M.LR-Civ. 83.7.  Although it is certainly permissible for Plaintiffs Duran and Jaramillo to represent themselves *pro se* in this litigation, under D.N.M.LR-Civ. 83.7, they cannot represent Plaintiffs Railyard Brewing Company or Ringside Entertainment.  Both of these Plaintiffs are limited liability companies and are therefore obviously not natural persons.  To the extent that

5

Plaintiffs Jaramillo and Duran continue to pursue claims in this lawsuit as *pro se* litigants, such representation shall be limited to their individual interests.

  B.  **Federal Jurisdiction**

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction. There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331." *Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1235 (10th Cir.2003)(internal quotations and citations omitted). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Karnes v. Boeing Co.,* 335 F.3d 1189, 1193 (10th Cir.2003)(citing *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir.1999)).

Because Plaintiffs did not respond to Defendants' Amended Motions to Dismiss, the only jurisdictional facts proffered by Plaintiffs appear in their Complaint. Plaintiffs Duran and Jaramillo allege that they reside and are domiciled in Santa Fe, New Mexico. Doc. 1at ¶¶ 1-2. Plaintiffs allege that Plaintiffs Railyard Brewing Co, and Ringside Entertainment are limited liability companies organized under the laws of the State of New Mexico with their place of business being in Santa Fe, New Mexico. ¶¶ 3-4. Plaintiffs allege that Defendant U.S. Bowling is a corporation organized in the State of Nevada with its principle place of business in Chino, California. Doc. 1 at ¶ 5. Plaintiffs allege that Defendant David Frewing resides in Chino, California. Doc. 1 at ¶ 6. Finally, Plaintiffs allege that Defendant Dill resides in Albuquerque, New Mexico. Doc. 1 ¶ 7. Plaintiffs do not clarify whether they are asserting that the Court has federal question jurisdiction or diversity jurisdiction but instead merely state that based on the

above facts the Court has "jurisdiction over the parties and the subject matter of this action." Doc. 1 at ¶ 10. I will accordingly consider both potential bases of jurisdiction.

### C. Law Regarding Federal Question Jurisdiction

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13 (1936)). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." *Caterpillar, Inc. v. Williams,* 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams,* 482 U.S. at 393 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 12 (1983)). *See Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1236 (10th Cir.2003) ("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'" (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808 (1986))). While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc. v. Williams,* 482 U.S. at 399. Even the plaintiff can only go so far in attempting to invoke federal-question jurisdiction,

because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists. *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479, 481 (10th Cir.1975).

In addition to the requirement that the federal question appear on the face of the complaint, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" *Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1235 (10th Cir.2003)(quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. at 808). As for the second method, beyond the requirement of a "substantial" question of federal law at the heart of the case, the federal question must also be "actually disputed," and its resolution must be necessary to resolution of the case. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005). Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331 ." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. at 313. In particular, the Court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. at 318–19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims). *See also* David L. Hanselman, *Supreme Court Federal Removal Jurisdiction, For the Defense* at 25, 65, September 2005 ("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of

8

the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").

The Supreme Court of the United States has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. at 813. Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." 478 U.S. at 810; *Morris v. City of Hobart,* 39 F.3d 1105, 1111 (10th Cir.1994).

Under the well-pleaded complaint rule, the federal question giving rise to jurisdiction must appear on the face of the complaint. *See Karnes v. Boeing Co.,* 335 F.3d 1189, 1192 (10th Cir.2003). This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). *See Schmeling v. NORDAM,* 97 F.3d 1336, 1339 (10th Cir.1996).

Where a federal question appears on the face of a well-pleaded complaint, federal jurisdiction is not automatic. Federal jurisdiction requires not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313 (2005). The federal issue will qualify for a federal forum if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. at 313–14.

### D. Law Regarding Diversity Jurisdiction

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.' " *Thompson v. Intel Corp.,* No. CIV 12–0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012) (Browning, J.)(citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." *McEntire v. Kmart Corp.,* No. CIV 09–0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010) (Browning, J.)(citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267–68, 2 L.Ed. 435 (1806), *overruled in part by Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *McPhail v. Deere & Co.,* 529 F.3d 947, 951 (10th Cir.2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." *Valdez v. Metro. Prop. & Cas. Ins. Co.,* 867 F.Supp.2d 1143, 1162–63 (D.N.M.2012) (Browning, J.)(citing *McPhail v. Deere & Co.,* 529 F.3d at 956). The Court will discuss the two requirements in turn.

### *i. Diversity of Citizenship.*

For diversity jurisdiction purposes, a person's domicile determines citizenship. *See Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." *McEntire v. Kmart Corp.,* 2010 WL 553443, at *3 (citing *Crowley v. Glaze,* 710 F.2d at 678). *See Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) ( "We have consistently held that if jurisdiction exists at

the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. *See Gates v. Comm'r of Internal Revenue,* 199 F.2d 291, 294 (10th Cir.1952) ("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." *McEntire v. Kmart Corp.,* 2010 WL 553443, at *3 (citing *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir.1994)). A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Gadlin v. Sybron Int'l Corp.,* 222 F.3d 797, 799 (10th Cir.2000) (quoting 28 U.S.C. § 1332(c)(1)).

### ii. *Amount in Controversy.*

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. *Martinez v. Martinez,* No. CIV 09–0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. Mar. 30, 2010) (Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. *See Alberty v. W. Sur. Co.,* 249 F.2d 537, 538 (10th Cir.1957); *Martinez v. Martinez,* 2010 WL 1608884, at *18.

Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1292 (10th Cir.2001) (Seymour, C.J.), *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens,* ––– U.S. ––––, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. *See* 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, *Federal Practice and Procedure, Jurisdiction* § 3704, at 566–95 (4th ed.2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff—regardless whether he or she is the only plaintiff who will share in the recovery—can recover over $75,000.00 from a single defendant—regardless whether the defendant has jointly liable co-defendants—then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. *See McPhail v. Deere & Co.,* 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." *McPhail v. Deere & Co.,* 529 F.3d at 955. The United States Court of Appeals for the Tenth Circuit's decision in *McPhail v. Deere & Co.* has foreclosed such an option from a

plaintiff who wishes to remain in state court. *McPhail v. Deere & Co.* holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955.

**E. The Court Does Not Have Federal Question Jurisdiction**

It is apparent that no federal law appears on the face of Plaintiffs' Complaint. As noted above, Plaintiffs' Complaint asserts three causes of action: (1) breach of contract; (2) promissory estoppel; and (3) negligent misrepresentation.[1] Although difficult to parse which facts are alleged to support the various causes of action, these appear to be "garden variety" state law causes of action. Given that Plaintiffs' is asserting state law claims, the Court further notes that there is no basis to conclude that Plaintiffs' claims "necessarily turn on a substantial question of federal law.'" *Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1235 (10th Cir.2003)(quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. at 808). For instance, the contract underlying Plaintiffs' breach of contract claim provides that California law would apply to all disputes arising under the contract. Doc. 1-1 at 24. Further, even giving Plaintiffs the benefit of the doubt, the Court is unable to conceive of a situation in which either the promissory estoppel or negligent misrepresentation claims would implicate substantial questions of federal law. Accordingly, I recommend concluding that there is no basis for the Court to exercise federal question jurisdiction.

**F. The Court Does Not Have Diversity Jurisdiction**

As noted above, Plaintiffs are New Mexico citizens for purposes of diversity jurisdiction and at least one Defendant, Defendant Dill, is also a New Mexico citizen. Accordingly, the

---

[1] Plaintiffs also appears to assert a cause of action for punitive damages. Doc. 1. However, "punitive damages are not a stand-alone claim" and should not be set out as a separate cause of action. *Gerald v. Locksley*, 785 F.Supp.2d 1074, 1145 (D.N.M. 2011). The Court accordingly does not consider the punitive damages claim as a viable cause of action for purposes of its analysis.

13

requirement of complete diversity is not present in this case. *See Ravenswood Inv. Co., L.P. v. Avalon Correctional Services*, 651 F.3d 1219, 1233 (10th Cir. 2011) ("When diversity is premised on diversity of citizenship under 28 U.S.C. § 1332(a)…each plaintiff must be diverse from each defendant to have what is known as complete diversity."). Because there is not complete diversity, I recommend concluding that the Court cannot exercise diversity jurisdiction over this suit.

For the above stated reasons, I recommend concluding that the Court does not have subject matter jurisdiction over Plaintiffs' Complaint. Given this lack of jurisdiction, the Court concludes that it is unnecessary to consider Defendants' remaining arguments as to why Plaintiffs' claims should be dismissed. *See Gerald v. Locksley*, 785 F.Supp.2d 1074, 1109 n.4 (D.N.M. 2011) (noting that where the court lacks subject matter jurisdiction, it is improper to make further rulings regarding those defendants).

### G. Defendant Dill's Motion for Sanctions

Defendant Dill contends that sanctions should be entered against Plaintiffs because following Chief Judge Johnson's previous decision dismissing Plaintiffs' Complaint, Plaintiffs were on notice that the trustee of the estate is entitled to quasi-judicial immunity and that they must receive permission in the bankruptcy proceeding to sue the trustee.[2] *See Duran v. Dill*, Civ. No. 16-928, Doc. 6 at 5-7 (D.N.M. Nov. 16, 2016).

Courts have the inherent power to levy sanctions in response to abusive litigation practices. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). This Court has the inherent power to impose a variety of sanctions on litigants to

---

[2] Defendants U.S. Bowling and Frewing did not move for sanctions against Plaintiffs and I therefore limit consideration of sanctions to Defendant Dill's request.

regulate its docket, promote judicial efficiency, and deter frivolous filings. *See ADS Fin. Servs. v. United States,* No. COV. 95–1469, 1997 WL 382110, *1 (D.N.M. Mar. 26, 1997)(unpublished decision)(Hansen, J.)(citing *Martinez v. Internal Revenue Service,* 744 F.2d 71, 73 (10th Cir.1984)). Because the exercise of the court's inherent power is not governed by rule or statute, *see Chambers v. NASCO, Inc.,* 501 U.S. at 43, 111 S.Ct. 2123, the power "must be exercised with restraint and discretion," *Roadway Express v. Piper,* 447 U.S. at 764, 100 S.Ct. 2455. As the United States Court of Appeals for the Tenth Circuit has explained:

> When deciding to impose sanctions on an abusive litigant the court must balance two competing interests: (1) the litigant's constitutional right of access to the courts, *see Bounds [v. Smith],* 430 U.S. [817,] 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 [ (1977) ]; and (2) the court's inherent power to regulate its docket, *see Link v. Wabash R.R.,* 370 U.S. 626, 629–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

*Green v. Price,* 76 F.3d 392, 1996 WL 56075, *2 (10th Cir.1996)(unpublished decision).

The right of access to the courts is not absolute or unconditional; a plaintiff has no constitutional right to bring frivolous or malicious lawsuits. *See Depineda v. Hemphill,* 34 F.3d 946, 948 (10th Cir.1994)("Plaintiff has no absolute, unconditional right of access to the courts and no constitutional right of access to prosecute frivolous or malicious actions.")(citing *Winslow v. Hunter,* 17 F.3d 314, 315 (10th Cir.1994)); *Tripati v. Beaman,* 878 F.2d 351, 353 (10th Cir.1989). Although "[l]itigiousness alone will not support an injunction restricting filing abilities[,] ... injunctions are proper where the litigant's abusive and lengthy history is properly set forth." *Id.* If a plaintiff has a lengthy history of repetitive filings and abuse of the judicial process, a court may, in its discretion, impose sanctions on future filings of a litigant under its "inherent power to enter orders necessary and appropriate in aid of our jurisdiction." *Depineda v. Hemphill,* 34 F.3d at 948 (imposing sua sponte sanctions on a criminal defendant who filed

eleven pro se appeals in approximately six years)("Based on plaintiff's history of repetitive filings and abuse of the judicial process, we have sua sponte chosen to impose appellate sanctions on plaintiff's future filings in this court 'commensurate with our inherent power to enter orders "necessary or appropriate" in aid of our jurisdiction' under 28 U.S.C. § 1651(a).")(quoting *Winslow v. Hunter,* 17 F.3d at 314–15). A court may impose reasonable filing restrictions on a plaintiff so long as the court publishes guidelines on how the plaintiff may file a subsequent action and provides the plaintiff an opportunity to respond to the protective order. *Id.* (citing *Tripati v. Beaman,* 878 F.2d at 354).

      The Court understands Defendant Dill's frustrations. This is the second time Plaintiffs have filed a lawsuit against him in his capacity as trustee in response to their displeasure with developments in the bankruptcy proceedings. Indeed, Plaintiffs are, in effect, utilizing these lawsuits as de facto appeals of adverse determinations in the bankruptcy proceedings. For instance, in the previous lawsuit before Chief Judge Johnson, Plaintiffs were unhappy with the appointment of Defendant Dill and therefore filed claims challenging his impartiality in an effort to have him removed as trustee. *Duran v. Dill*, Civ. No. 16-928, Doc. 6. Their claims were, of course, the same objections Plaintiffs advanced against his appointment in the bankruptcy proceedings. After Chief Judge Johnson dismissed Plaintiffs' first lawsuit against Defendant Dill on the basis that, as trustee, Defendant Dill is entitled to quasi-judicial immunity and Plaintiffs failed to obtain permission in bankruptcy court to sue him, Plaintiffs are again attempting to sue him. Plaintiffs' present suit is founded on Plaintiffs' objections in the bankruptcy proceedings to the sale of the bowling equipment. Bank. Proc., Doc. 629 at 7-8. When Judge Thuma denied those objections, Plaintiffs immediately filed the present lawsuit

16

without regard for Chief Judge Johnson's previous ruling. Given this, Plaintiffs' actions are frivolous at best and abusive at worst.

The posture of this case is similar to that in *Clark v. Meijer*, 376 F.Supp.2d 1077 (D.N.M. 2004). In *Clark*, the court entered filing restrictions on the plaintiffs' future attempts to sue the defendants. The plaintiffs had a long history of filing lawsuits against the defendants but the most relevant facts for purposes of the court's award of sanctions was that the plaintiffs initiated a second suit in New Mexico against the defendants after their first suit was dismissed for lack of personal jurisdiction. *Id.* at 1086. The court concluded that "[t]he filing of this suit after a court within this district already determined the issue of personal jurisdiction indicates the [plaintiffs'] willingness to abuse the Court's judicial process in hopes of achieving a personal pecuniary benefit." *Id.* The court therefore imposed filing restrictions on the plaintiffs and granted defendants their reasonable attorneys' fees and other expenses in preparing their motion to dismiss. *Id.* at 1087.

In an effort to deter future misconduct, I recommend that filing restrictions be placed on Plaintiffs to prevent future frivolous lawsuits against Defendant Dill. As noted above, Chief Judge Johnson's previous dismissal of Plaintiffs' prior lawsuit against Defendant Dill concluded that Defendant Dill, in his capacity as bankruptcy trustee, is immune from suit. *Duran v. Dill*, Civ. No. 16-928, Doc. 6 at 5-6. Second, Chief Judge Johnson dismissed that lawsuit because Plaintiffs did not obtain permission in bankruptcy court to sue Defendant Dill pursuant to the *Barton* doctrine. *See id.* at 6 (citing *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012)). I therefore recommend that as a precondition to filing future lawsuits Plaintiffs be required to (1) file a petition with the Clerk of Court requesting leave to file a pro se proceeding against Defendant Dill, (2) plaintiffs file with Clerk of Court a notarized affidavit setting out the basis of

the causes of action they intend to pursue against Defendant Dill and specifically why the intended causes of action are not directed toward Defendant Dill in his capacity as the bankruptcy trustee, or (3) that they have received permission in bankruptcy court to bring suit against Defendant Dill. I further recommend that Defendant Dill be granted reasonable attorneys' fees and other expenses in connection with the preparation of his motion to dismiss.

## III. CONCLUSION

For the above stated reasons, I recommend that:

- Defendant Craig Dill's Amended Motion to Dismiss for Failure to State a Claim, Lack of Jurisdiction, and Motion for Sanctions (Doc. 11) be GRANTED and that sanctions consistent with those outlined above be entered against Plaintiffs;

- Defendants David Frewing and U.S. Bowling's Amended Motion to Dismiss, or in the alternative, Motion to Stay Proceedings be GRANTED.

Because I recommend that these Motions be granted, I ultimately recommend that Plaintiffs' Complaint be dismissed with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**